MARK D. BROWN vs. ROBERT L. LEIGHTON.

Barnstable. December 11, 1981. — April 9, 1982.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Workmen's Compensation Act*, Subrogation, Uninsured employer, Action against third person. *Negligence*, Failure to obtain workmen's compensation coverage.

In an action under G. L. c. 152, § 66, by an employee against his uninsured employer, the employer was not entitled to have damages mitigated by the amount the employee had recovered from a negligent third party. [758-763] O'CONNOR, J., dissenting.

CIVIL ACTION commenced in the Superior Court on August 7, 1975.

The case was tried before *Byron*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Steven Babitsky* for the plaintiff.

LYNCH, J. On April 4, 1975, while in the course of his employment as a taxicab driver for the defendant, the plaintiff was injured when the taxicab he was driving was struck from the rear by a vehicle owned by Ray's Auto Supply, Inc., and operated by Edward F. Graham. After learning that his employer was not insured, as required by the Workmen's Compensation Act (Act), G. L. c. 152, the plaintiff instituted the instant action against his employer with the advantages afforded by G. L. c. 152, § 66. The plaintiff then filed a separate action against the allegedly negligent third party, Edward F. Graham. Following a judgment against the third party awarding the plaintiff $8,000, plus interest and costs, the plaintiff accepted $9,000 from the third party as a settlement of the judgment. The

instant action was tried to a jury on the issue of damages alone, the employer having conceded liability, and the jury returned a verdict in favor of the plaintiff in the amount of $10,000. At the trial, counsel agreed that whether the defendant was entitled to credit toward any verdict to the extent of the plaintiff's recovery against the third party was a question of law to be decided by the judge. Following the verdict, the judge concluded that the employer should be credited with the amount of the plaintiff's recovery against the third party and ordered entry of a judgment in the amount of $1,000, plus interest and costs. The plaintiff appealed and we transferred the case on our own motion.

The sole issue on appeal is whether the trial judge erred in permitting the uninsured employer to be credited with the amount the plaintiff recovered from the negligent third party. We conclude, for the reasons that follow, that it was error under the circumstances of this case to allow the uninsured employer to be, in effect, subrogated to the rights of the employee against the negligent third party. In reaching this conclusion, we review various provisions of the Workmen's Compensation Act in light of the purposes of the Act as a whole as well as the nature of subrogation.[1]

We note at the outset that G. L. c. 152 is silent on the precise question presented here. It is helpful, however, to review those circumstances under which subrogation rights for the insurer are provided by the Act. At the time of the plaintiff's injury, § 15 of G. L. c. 152, as appearing in St. 1971, c. 888, § 1, provided in part, "Where the injury

---

[1] We recognize, as the dissent aptly reminds us, that, technically, the defendant does not seek to be subrogated to the rights of the plaintiff against the negligent third party. The defendant does not, however, seek contribution as a joint tort-feasor, as the dissent's analysis assumes by analogy. The only distinction between the instant case and one involving subrogation in its true form is that here the plaintiff, by fortuity, has already exercised his rights against the third party and the defendant seeks the benefit of the fruits of the plaintiff's efforts. In the context of this case, this is a distinction that affects neither the rights of the parties nor the merits of the subrogation analysis. To give weight to such a distinction ignores the central fact of this case, namely, that the employer is uninsured.

for which compensation is payable was caused under circumstances creating a legal liability in some person other than the insured to pay damages in respect thereof, the employee shall be entitled, without election, to the compensation and other benefits provided under this chapter. Either the employee or insurer may proceed to enforce the liability of such person, but the insurer may not do so unless compensation has been claimed or paid under an agreement. The sum recovered shall be for the benefit of the insurer, unless such sum is greater than that paid by it to the employee, in which event the excess shall be retained by or paid to the employee." As stated in *Furlong* v. *Cronan*, 305 Mass. 464, 467 (1940), one of the purposes of § 15 is, "to preserve the cause of action [against the third party] for the benefit of the insurer." In *Furlong*, we held that although an insurer may bring a third party action after compensation has been claimed, but before it has been paid, an insurer must await actual compensation payment before it may continue to prosecute the third party action. *Id.* at 469. See *Capozzi's Case*, 4 Mass. App. Ct. 342, 346-347 (1976). Section 15 clearly makes payment of compensation a condition precedent of any direct recovery by the insurer against a third party or any right to reimbursement for compensation paid from a recovery by the employee against a third party. An employer's right to be subrogated to the rights or recovery of an employee, then, arises only by virtue of the statute, and the purpose of that right is to "give the employer so much of the negligence recovery as is necessary to reimburse him for his compensation outlay." *Richard* v. *Arsenault*, 349 Mass. 521, 524 (1965).

The employer in the instant action did not avail itself of insurance with a private insurer or attempt to qualify as a self-insurer as required by G. L. c. 152, § 25A. No claim to compensation nor payment to the plaintiff was made. Resolving whether the employer should nonetheless be entitled to subrogation under these circumstances requires some consideration of the nature of subrogation and the requirements of the Workmen's Compensation Act.

The origin and nature of the doctrine of subrogation lies in equity, and the principles of that jurisprudence govern its application. *Amory* v. *Lowell*, 1 Allen 504, 507 (1861). See *Travelers Ins. Co.* v. *Graye*, 358 Mass. 238 (1970). "The doctrine of subrogation, which rests 'upon natural justice and equity' (*Amory* v. *Lowell*, 1 Allen 504, 507 [1861]), is not to be applied if the result is injury or prejudice to the person whose rights are sought to be used by another." *Hill* v. *Wiley*, 295 Mass. 396, 403 (1936). The object of subrogation is to prevent injustice and one who seeks equity must do equity. See *New England Merchants Nat'l Bank* v. *Kahn*, 363 Mass. 425, 428 (1973).

With these principles in mind, we examine the employer's conduct in failing to insure himself, and the purposes of the Workmen's Compensation Act. The Workmen's Compensation Act has been compulsory for most employers since 1943 and there is no question that the Act was compulsory for the instant employer. As we recently noted in *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21 (1979), failure to insure through a private insurer or to qualify as a self-insurer as required by G. L. c. 152, § 25A, carries with it severe penalties. Where an employer refuses to comply with the statutory mandate, it may be held liable in an action for tort damages without regard to its negligence or other fault. In addition, the common law defenses of fellow servant, assumption of the risk, and contributory negligence are inapplicable if the employee's injury arises in the course of employment. G. L. c. 152, §§ 66 and 67. *LaClair* v. *Silberline Mfg. Co.*, *supra*. *Barrett* v. *Transformer Serv., Inc.*, 374 Mass. 704 (1978). Criminal penalties for noncompliance with the Act's mandate are provided by G. L. c. 152, § 25C. A fine of not more than $500 and imprisonment of not more than one year may be imposed on the employer who fails to provide the required coverage. A president or treasurer, or both, of an employer corporation may be held personally liable to this criminal punishment.

As we noted further in our *LaClair* decision, these statutory provisions reveal that "the Workmen's Compensation

Act is a humanitarian measure designed to provide adequate financial protection to the victims of industrial accidents. There can be little doubt that without the benefits provided by the statute, as enforced through compulsory insurance, many injured employees and their families would be forced to shoulder by themselves large portions of the costs of job-related accidents" (citations omitted). *Id.* at 27. It is manifest that the legislative design in enacting the Act and in making its provisions compulsory on almost all employers was to promote its use throughout the Commonwealth. This court recognized the underlying purpose in *Young* v. *Duncan,* 218 Mass. 346, 349 (1914), and reiterated it as recently as our decisions in *Ferriter* v. *Daniel O'Connell's Sons,* 381 Mass. 507 (1980), *LaClair* v. *Silberline Mfg. Co., supra,* and *Barrett* v. *Transformer Serv., Inc., supra.*

Where the employer is insured the Legislature has clearly provided for the division of the proceeds of third-party actions between employee and employer. G. L. c. 152, § 15. Nowhere in the statute, however, is there even a suggestion that an employer who neglects or refuses to follow the statutory mandate should be afforded the same right to share in the recovery against negligent third parties. That the statute makes it mandatory for most employers to provide insurance coverage in order that financial assistance is readily and speedily available to their injured employees strongly suggests the contrary.

Were we to permit an uninsured employer such as the defendant to reap the benefits of subrogation under the circumstances of this case, we would be rewarding him for his illegal conduct; we would also be promoting the defeat of a strong and enduring legislative program to provide the employee and the employee's family with the "right to be insured against the grievous financial impact that may result from injury in the workplace." *LaClair* v. *Silberline Mfg. Co., supra* at 27.

In reaching our decision, we note that other jurisdictions have concluded similarly in analogous circumstances. In

*Baio* v. *Commercial Union Ins. Co.*, 410 A.2d 502 (Del. 1979), the Supreme Court of Delaware denied subrogation rights to an insurer who sought to be reimbursed under a statutory provision similar to G. L. c. 152, § 15, for its payment of compensation to an employee after the employee recovered against one of the third parties he had sued. The insurer originally had joined the employee as a plaintiff in the third-party action. After entry of the action, the insurer discovered that it had a tort liability contract of insurance with one of the third-party defendants; thereafter it represented its insured and judgment was entered for the defendant whom it represented. The insurer vigorously defended the suit. The court concluded that although the insurer had a statutory right of subrogation to recover the amounts paid or payable under the Delaware compensation act, when the insurer had a conflict of interest such as the one there presented, its conduct, and its right of recovery were governed by equitable principles. The court noted the insurer's vigorous defense in the third-party action and denied the insurer its statutory right to subrogation. See *Arendas* v. *Rich & Co.*, 220 F. Supp. 957 (W.D. Pa. 1963).

Similarly, in *State ex rel. Woods* v. *Hughes Oil Co.*, 58 N.D. 581 (1929), the court denied an uninsured employer reimbursement and subrogation rights after the employee recovered against a negligent third party. Moreover, as the North Dakota compensation act then read, it required the employer to pay compensation as a penalty for failure to comply with the insurance provisions of the Act. In so concluding, the court noted that the Compensation Act considers an employer who fails to obtain insurance "to be a wrongdoer, and properly subject to penalties rather than one to be favored and accorded the benefit of the doctrine of subrogation." *Id.* at 600.

We recognize that, to some extent, our ruling allows the employee a double recovery. We observe, however, that the plaintiff was injured in April, 1975. Three and one-half years later he recovered against the negligent third party. The plaintiff, nearly seven years after his injury, has yet to

reap the fruits of his right to sue his uninsured employer. We note, in this regard, that one aim of the Workmen's Compensation Act is that there be speedy payment of the amount due an injured employee. *Ahmed's Case*, 278 Mass. 180, 187 (1932). Payments under the Act were meant to provide financial relief for the injured employee's inability to earn wages or for the deprivation of support flowing from wages the employee had previously received. G. L. c. 152, § 35. See *Devine's Case*, 236 Mass. 588, 593 (1921); *Duart* v. *Simmons*, 231 Mass. 313, 319 (1918). To the extent that the plaintiff forfeited these and other privileges he may have had under the Act, his recovery cannot be represented fairly as a double one. If there be a remaining element of double recovery, in our view, the Act so provides. The Act creates a right of action for an employee against an uninsured employer to recover for injuries occurring during the course of employment regardless of fault. G. L. c. 152, § 66. The mere fortuity that the plaintiff was able to recover from a negligent third party in an action brought wholly at the employee's risk and expense and in an action which the employer could not institute itself, or force the employee to institute, should not enure to the employer's benefit. We note in this regard that the Act itself provides for the doubling of compensation where the employer is seriously at fault. G. L. c. 152, § 28. See *Boardman's Case*, 365 Mass. 185 (1974).

We order that the judgment be set aside and a new judgment be entered in favor of the plaintiff, in the amount of $10,000, plus interest and costs.

*So ordered.*

O'CONNOR, J. (dissenting). The court concludes "that it was error under the circumstances of this case to allow the uninsured employer to be, in effect, subrogated to the rights of the employee against the negligent third party." *Supra* at 758. The trial judge did not allow the uninsured employer

to be effectively subrogated to rights of the employee, and so I do not agree that it was error to credit the employer with the amount of money the employee accepted in settlement of his claim against the third-party tortfeasor.

Subrogation is "[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or the claim." Black's Law Dictionary 1279 (5th ed. 1979), citing *Home Owner's Loan Corp.* v. *Baker*, 299 Mass. 158, 162 (1937). The employee has accepted payment in settlement of his claim against the third party. He no longer has a claim, demand, or right to which the employer can be subrogated. The employer is not asserting rights of the employee, as might be the case if the employee had first recovered from the employer, and the employer were asserting the employee's rights against the third party. If that were the case before us, the employee would have but one recovery, and we would have to decide whether the employer is entitled to be subrogated to the employee's right against the negligent third party. That is not the case before us. Here the question is simply whether the employer is entitled to have damages mitigated by the amount already recovered by the employee for the same injuries for which he seeks damages in this action. Cases from other jurisdictions dealing with subrogation are not helpful.

The source of this employee's right to recover from his employer is G. L. c. 152, § 66. This is a tort action in which the plaintiff is entitled to the full scope of tort damages for personal injury. *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 26 (1979). *Barrett* v. *Transformer Serv., Inc.*, 374 Mass. 704, 705 (1978). *Ferris* v. *Grinnell*, 353 Mass. 681, 682 (1968). Where a plaintiff is tortiously injured by two wrongdoers, he is entitled to only one satisfaction, and payment received from one must be considered in mitigation of the damages assessed against the other. *Tritsch* v. *Boston Edison Co.*, 363 Mass. 179, 182 (1973). *Wadsworth* v. *Boston Gas Co.*, 352 Mass. 86, 94 (1967). *Daniels* v. *Celeste,*

303 Mass. 148, 152 (1939). This in no way derogates from the collateral source rule by which money to which a plaintiff is entitled by contract is not set off against tort recovery.

General Laws c. 152, § 25C, is designed to exert pressure upon employers to insure under the law by imposing a fine or by imprisonment, or both, for not doing so. The same purpose is evident in c. 152, § 66, by which the uninsured employer is exposed to liability for full tort damages without negligence and without specified common law defenses. *Opinion of the Justices*, 309 Mass. 571, 598 (1941). The denial of a right of mitigation therefore, is not essential to the legislative purpose either to provide adequate financial protection to the victims of industrial accidents or to exert pressure on employers to insure. However, the denial of a right of mitigation conflicts with the "principle underlying the workmen's compensation law that there shall not be double recovery for injury — once by way of compensation and once by way of damages." *Richard* v. *Arsenault*, 349 Mass. 521, 524 (1965), quoting from *McDonald* v. *Employer's Liab. Assurance Co.*, 288 Mass. 170, 174 (1934).

Although G. L. c. 152, § 66, provides that numerous specified common law defenses shall not be available to the employer, it does not expressly or by necessary implication make the long-standing common law right of set-off in mitigation of tort damages unavailable to an uninsured employer. The availability of mitigation results in no injustice to the employee, who is fully compensated, or to the negligent third party, who is responsible for paying damages for the injuries he caused. The benefit to the employer is no different than the benefit inuring to any defendant joint tortfeasor when the plaintiff has previously chosen to settle his claim against another joint tortfeasor, leaving the defendant with the benefit of the settlement as a set-off or deduction from damages.[1] This benefit is not the result of subrogation,

---

[1] The court attributes to the dissent's analysis an assumption that the defendant seeks contribution as a joint tortfeasor. No such assumption is made. The defendant seeks nothing from the negligent third party.

"technically" or "in effect." Whether the negligent third party has a right to contribution from the defendant employer is not before us.

I would affirm the judgment of the trial court.