Lauriat, J.
The plaintiff, Rogers Street, LLC (“Rogers”), commenced this action seeking declaratory and injunctive relief against the defendant The American Insurance Company (“AIC”). Specifically, Rogers asks that this court declare that AIC has not fully compensated Rogers for its loss, and that AIC thus has no right of subrogation under Rogers’ insurance policy (“Policy”) with AIC. Rogers had previously filed a separate action against AIC seeking recovery under the Policy for damages resulting from an explosion at Rogers’ property. That action is still pending. Rogers Street, LLC v. American Insurance Company, Civil Action No. 2002-5211 (Middlesex Super.Ct.) (“Action #1”).
AIC has, in turn, filed a subrogation action arising out of the same incident. That action is also currently pending. American Insurance Company v. Siena Construction Corp., et al., Civil Action No. 2003-4929 (Middlesex Super.Ct.) (“Action #2”).
In its present action (“Action #3”), Rogers seeks to stay Action #2 until Action # 1 is resolved, on the theory that AIC’s subrogation action is premature and in violation of the common-law “made whole” doctrine. Essentially, therefore, Rogers has filed “Action #3" in order to stay Action #2 pending the resolution of Action #1. For the following reasons, Rogers’ motion to stay Action #2 is denied without prejudice.
DISCUSSION
“(A) motion to stay proceedings is ordinarily a matter addressed to the sound discretion of the trial judge.” Travenol Lab., Inc. v. Zotal, Ltd., 394 Mass. 95, 97 (1985). Stays are commonly granted in situations involving a pending appeal or administrative action. See, e.g., Director of Div. of Employment Section v. Town of Mattapoisett, 392 Mass. 858, 861 (1984) (“Absent special circumstances, determination of a cause of action entirely contingent on the validity of an appealed judgment in a separate proceeding should be stayed pending resolution of the appellate process unless the detriment to the litigants of delay outweighs the benefits of judicial economy and orderly adjudication”); J.&J. Enters., Inc. v. Martignetti, 369 Mass. 535, 541 (1976) (“Assuming, without deciding, that judicial action in the present cases should await further administrative action, we think dismissal of the actions was not the proper remedy, since a stay would . . . avoid possible unfair prejudice to the plaintiffs’ rights”). In those situations, the court balances the possibility of prejudice to the parties against the economical and orderly adjudication of the issues. Id.
As noted above, Rogers has filed Action #3 to stay Action #2 pending the outcome of Action #1. AIC has moved in Action #2 to join Rogers, as either a plaintiff or a defendant, in that action. Rogers has opposed that motion. At the September 29, 2004, oral argument on the present motion, counsel for Rogers noted that settlement talks between Rogers and AIC with respect to Action #1 have been ongoing, and that if a settlement is not achieved, the parties would be ready for trial within six months.
I. AIC’s Right to Subrogation
Action #2 is a subrogation action. “The origin and nature of the doctrine of subrogation lies in equity, and the principles of that jurisprudence govern its application.” Brown v. Leighton, 385 Mass. 757, 760 (1982). Subrogation “operates when a creditor or victim of loss is entitled to recover from two sources, one of which bears a primary legal responsibility. If the secondaiy source (the subrogee) pays the obligation, it succeeds to the rights of the party it has paid (the . . . loss victim, called the subrogor) against the third primarily responsible party.” Frost v. Porter Leasing Corp., 386 Mass. 425, 426-27 (1982), quoting Travelers Ins. Co. v. Graye, 358 Mass. 238, 240, 241 (1970). “The doctrine of subrogation ... is not to be applied if the result is injury or prejudice to the person whose rights are sought to be used by another.” Brown, 385 Mass, at 760, quoting Hill v. Wiley, 295 Mass. 396, 403 (1936). Rather, the “object of subrogation is to prevent injusticef.]” Id. Additionally, “(s)ubrogation facilitates the speedy payment of claims to an injured person, avoids the necessity of engaging in a lengthy, cumbersome and expensive legal battle, and prevents the pitfalls of double recovery or double payment.” Safety Ins. Co. v. Massachusetts Bay Transp. Auth., 59 Mass.App.Ct. 99, 103 (2003).
Subrogation applies “to payments under policies of insurance. Upon payment, the insurer is entitled to share the benefit of any rights of recovery the insured may have against a tortfeasor for the same loss covered by the insurance.” Id. at 427. “An insurer’s right of subrogation may be reserved in an agreement between the insurer and the insured; or may arise by implication, as a matter of general law[.]” Id. (internal citation omitted). “Subrogation *409 returns anyexcess [compensation] to the insurer, who can then recycle it in the form of lower insurance costs.” Frost, 386 Mass, at 428.
Rogers and AIC agree that the Policy contains a subrogation clause, titled “Transfer of Rights of Recovery Against Others to Us” (“the Subrogation Clause”). This clause states that
If any person or organization to or for whom we make payment under this Coverage Section has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. (Emphasis added.)
AIC asserts that since the Subrogation Clause provides for subrogation “to the extent of [AIC’s] payment” to Rogers, it is entitled to subrogation insofar as it has paid Rogers, and thus Action #2 is proper. While conceding that AIC has made some payments, Rogers contends that AIC is not yet entitled to subrogation because Action #1, in which Rogers seeks payment from AIC, is still pending.
The court cannot make any determination about whether AIC has a subrogation right at this point because the Subrogation Clause is only triggered once AIC makes payments under a certain “Coverage Section.” In Action #3, the parties have not presented any evidence to show that the payments AIC has already made to Rogers were under that Coverage Section.
Moreover, the court is not willing to hold that the “made whole” doctrine[1] on which Rogers relies applies in Massachusetts. In Liberty Mut Ins. Co. v. National Consol. Warehouses, Inc., 34 Mass.App.Ct. 293 (1993), the Court held that “[if], as here, the insurer has partially reimbursed the insured for the loss, ‘both insurer and insured would be the real parties in interest with the insurer a subrogee to the extent of its payment.’ ”[2] 34 Mass.App.Ct. at 296-97 (emphasis added), quoting 16 Couch on Insurance §61:26 (rev. ed. 1983).[3] There, the plaintiff-insurer had paid its insured the policy limit, but the insured’s losses exceeded that amount. Id. at 295. The plaintiff-insurer filed a subrogation action against the original tortfeasors before the insured brought an action against and ultimately settled with those tortfeasors. Id. at 294-95. The issue before the court was whether the plaintiff-insurer could proceed with its subrogation action after the insured had settled with the tortfeasors and agreed to release all the parties allegedly liable for the loss. Id. at 293.
Although the plaintiff-insurer had filed its action against the tortfeasors before its insured had, and therefore before its insured had been fully compensated for its loss, the insured resolved its claims with the tortfeasors by the time any issues arose. Id. Here, neither party has indicated that Rogers has reached any resolution with the insured; in fact, it has not reached a resolution with AIC, its insurer, as evidenced by the pendency of Action # 1. In Liberty Mut. Ins. Co. v. National Consol Warehouses, Inc., the insurer fulfilled its obligations to its insured under the policy, but that amount did not fully compensate the insured who also received compensation from the tortfeasors. Id. at 294-95, 297. That case did not accept or adopt the “made whole” doctrine.
Even if liberty Mut. Ins. Co. v. National Consol. Warehouses, Inc. adopted the “made whole” doctrine, the present case is distinguishable on its facts. There, the plaintiff-insurer had paid its insured the policy limit; thus, while the insured was not fully compensated for its loss, the plaintiff-insurer had paid all it was required to pay. Id. at 294. Here, the fact that Action #1 is still pending suggests that AIC has not paid Rogers its policy limit.[4]
The above discussion notwithstanding, these issues are more properly resolved in Action #2 itself. As noted, AIC has sought to join Rogers as a plaintiff or defendant in that action.[5] Once that issue is resolved, Rogers will be in a better position to assert its request for a stay of Action #2.[6]
II. Prejudice to the Parties in Action #2
Even if the court concluded that a stay of Action #2 would achieve judicial economy and an orderly adjudication of the issues, because of the pendency of Action # 1, the potential of prejudice to the parties outweighs that benefit. The defendants in Action #2 are Siena Construction Corporation, American Plumbing and Heating Company, Arrowstreet, LLC, AHA Consulting Engineers, and Minus-Eleven, Inc. (“the Action #2 Defendants”). None of these parties has been provided an opportunity to be heard on Rogers’ motion to stay Action #2, despite their clear involvement with that litigation.[7] AIC has indicated that discovery in Action #2 is still ongoing, with depositions still to be taken and documents still to be exchanged. Staying Action #2 would unfairly prevent the Action #2 Defendants from resolving AIC’s claims against them.
Moreover, Action #2 has been consolidated for the purposes of discovery with two other lawsuits against the same Action #2 Defendants. The first lawsuit is Figueroa v. Siena Construction Corporation, et al, Civil Action No. 03-707 (Middlesex Super.Ct.) (“Action #4”),[8] was brought by an individual who worked at Rogers property and who was allegedly injured by the explosion. The second lawsuit, Great Northern Insurance Co. A/S/O Microbia, Inc. v. Siena Construction Corporation, et al., Civil Action No. 04-618 (Middlesex Super.Ct.) (“Action #5”),[9] was brought by a tenant at Rogers’ property that allegedly suffered property damage from the explosion. Staying Action #2 will not stay Action #4 *410 or Action #5, thus both actions would proceed even if Action #2 were stayed.
AIC will be prejudiced by Actions #4 and #5 continuing, however, because AIC will not be able to participate in the discovery. Res judicata issues notwithstanding, Actions #4 and #5 will have most likely neared the end of discovery by the time the stay is lifted in Action #2, thereby requiring the Action #2 Defendants to duplicate those discovery actions they already took in Actions #4 and #5. Moreover, staying Action #2 would prevent AIC from participating in the depositions of the Action #2 Defendants. Thus, after the stay is lifted, AIC will likely have to re-take the depositions of the parties involved if issues relevant to Action #2 alone have not been addressed.
Accordingly, the prejudice to the parties that would result if this court stayed Action #2 far outweighs any benefit from awaiting the resolution of Action # 1 before permitting AIC to proceed with its subrogation action.
ORDER
For the foregoing reasons, The Plaintiff Rogers Street, LLC Motion to Stay American Insurance Company v. Siena Construction Corp., et al., Civil Action No. 2003-4929 (Middlesex Super.Ct.) is DENIED, without prejudice.

The ‘made whole’ doctrine reinforces the insurance principle that the insurer, not the insured, assumes the risk of a covered loss. If an insurer is permitted to assert a subrogation right when the insured is not made whole, then the insured would be liable for a covered loss. The insurer must assume the risk of an unpaid loss because that is a risk the insured has paid in the form of premiums.” 22 Eric Mills Holmes, Holmes' Appleman on Insurance § 141.2(2) (B) (1) (2ded. 2003). “[A] subrogated insurer is entitled to no subrogation, or to reduced subrogation, if the result of full subrogation would be to cause the insured to be less than fully compensated for the loss . . . ‘Make whole doctrine’ is an insurance principle that, absent an agreement to the contrary, the insurer may not enforce a right to subrogation until the insured has been fully compensated for its injuries . . . ¡TJhis doctrine is merely a rule of interpretation, a gap filler that comes into play when contracts fail to address the issue clearly and, of course, the beneficiary may sign away the right to be made whole.” 4 Richard H. Long, The Law of Liability Insurance §23.02(2)(a) (2004) (emphasis added) (footnotes omitted).

This holding appears to apply the insurance exception of Mass.R.Civ.P 17(a) to a non-surefy situation. Rule 17(a) requires that “every action shall be prosecuted in the name of the real party in interest.” However, the rule states, “a[n] insurer who has paid all or part of a loss may sue in the name of the assured to whose rights it is subrogated.” Mass.R.Civ.P. 17(a) (emphasis added).

This edition of Couch on Insurance has since been superseded.

The possibility exists, however, that the damages AIC seeks from the defendants in Action #2, represent what AIC has already paid Rogers. For example, if the tortfeasors who allegedly caused Rogers’ loss were X, Y, and Z, and AIC paid Rogers for those losses that only X and Y caused, Action #2 is potentially AIC’s subrogation action against X and Y while Action #1 is Rogers’ action against AIC for the losses that Z caused. In that situation, it is unclear whether the “partially reimbursed” language in Liberty Mut. Ins. Co. would apply to permit AIC to seek subrogation against two of the three tortfeasors.

If the losses to which Rogers is entitled from the Action #2 defendants are greater than the amount AIC has already paid Rogers, it appears that Rogers should be joined as a party to Action #2.

If Rogers is not joined in Action #2, it may attempt to intervene pursuant to Mass.R.Civ.P. 24. Rule 24(a)(2) permits intervention “when the applicant claims an interest relating to the properly or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest.” Rule 24(b)(2) provides for permissive intervention “when an applicant’s claim or defense and the main action have a question of law or fact in common.”

While AIC served the Action #2 Defendants with its opposition to Rogers’ motion to stay, Rogers did not serve its motion to stay on those defendants.

The defendants in Action #4 are the Action #2 Defendants plus Associated Mechanical Services, Inc., and Sonet Electrical Systems, Inc.

The defendants in Action #5 are the Action #2 Defendants, except for Arrowstreet, LLC, plus Microbia, Inc.; Associated Mechanical Services, Inc.; and Sonet Electrical Systems, Inc.